## 16901.   ALABAMA GREAT SOUTHERN RAILROAD CO. *v.* BUCHANNON & CRISP.

The question whether the presumption of negligence raised by proof of the killing of a dog by the running of a locomotive is rebutted is essentially for determination by a jury; and since the jury in this case could have legitimately concluded, from the evidence, that the employees of the railroad company failed to exercise ordinary care to discover the dog upon the track and to avoid killing it, the verdict against the company can not be disturbed by this court.

DECIDED MARCH 2, 1926.

Appeal; from Dade superior court—Judge Tarver.   October 10, 1925.

*McClure, Hale & McClure, Maddox, Maddox & Mitchell,* for plaintiff in error.

*B. T. Brock,* contra.

LUKE, J.   This is a suit for damages for the alleged negligent killing of a dog by the defendant's south-bound passenger-train. A justice of the peace rendered a judgment for plaintiffs, the case was appealed to the superior court, and a jury in that court found for plaintiffs.   The overruling of defendant's motion for a new trial based solely upon the general grounds brings the case to this court.

The only eye-witness (sworn for the plaintiff) testified substantially as follows:   "I was in the yard and happened to look up when the train run, and I seen the dog come out just as it hit him.   He was about 150 yards, or 100 yards, from the crossing. Don't think I heard any whistle.   If I did, I don't remember it. . . The dog was on the railroad right this side of the crossing. There were two other dogs there.   They were running something in the field there that morning.   The dogs had just got over the track.   Just as I looked up, the train hit the dog.   I don't know whether it had been on the track or not.   I could hardly say except that it hit him.   They were all in sort of a bunch together. This dog must have been about the middle of the track when it knocked him off.   I think the crossing was a private one.   People used it.   It had been a public crossing.   The railroad on each side is fenced.   There is a cattle-guard at this gate.   The engine

Appeal and Error, 4 C. J. p. 852, n. 56.

Railroads, 33 Cyc. p. 1215, n. 42; p. 1274, n. 16; p. 1276, n. 29; p. 1305, n. 39.

was right on my dogs when I seen them,—must have been right on them. Could not see the dogs for the steam coming out of the engine. Seems this dog was kind of in front of the other dogs, in front of my dogs, and mine got out of the way and this one didn't. I heard them over there in the field adjoining the railroad. They were somewhere in that field running when I heard them. I didn't hear the train when I saw the dogs running. It must have been thirty minutes until I heard the train coming. Just happened to look up and see it hit the dog. Wasn't any time at all until the engine hit the dog."

The engineer testified that he rode on the right side of the engine, that he could not have seen the dog if it came upon the track within fifty feet of the engine, that he did not see the dog at all, that he only knew of the killing when told about it later, that he could have seen the dog on the track a distance of 150 yards ahead of him, and that he did not think the crossing below which the dog was killed was a public crossing. He testified: "I am to look out all the time and to observe anything and everything that might present itself on the track. I was looking out when I went down there. I am looking for anything that may present itself on the track. I have a pretty good steaming engine, and steam is always there. There is also a steam-gauge pop-valve. When it gets too much it pops off. It don't get too low on that run." The fireman's position was on the left side of the engine. Nearly all his time was taken up with firing, and he did not see the dog. He knew the crossing near which the dog was said to have been killed. There was a slight down-grade there, and the train could hardly have been stopped within a distance of 150 yards.

A prima facie case was made for plaintiffs by proof that the dog was killed by the defendant's locomotive, and there should have been a recovery unless the company made it appear that its agents exercised "all ordinary and reasonable care and diligence." Civil Code (1910), § 2780. It was the duty of the company, through its delegated agents or employees, to keep a lookout ahead of the train and to use ordinary and reasonable diligence to discover the dog upon the track and to avoid injuring it. *Ga. R. & Bkg. Co.* v. *Churchill,* 113 *Ga.* 12 (38 S. E. 336) ; Civil Code, § 2780, supra. The defendant contends that the evidence of the only eye-witness

shows that the dog came suddenly upon the track immediately in front of the engine, that the occurrence was an unavoidable accident, and that under the following decisions cited by him there could have been no recovery: *So. Ry. Co.* v. *Thompson,* 129 *Ga.* 367 (58 S. E. 1044) ; *Macon, Dublin & Savannah R. Co.* v. *Hamilton,* 9 *Ga. App.* 254 (70 S. E. 1120) ; *A. C. L. R. Co.* v. *Cox,* 11 *Ga. App.* 384 (75 S. E. 268) ; *Central of Ga. Ry. Co.* v. *O'Neal,* 11 *Ga. App.* 461 (75 S. E. 674). We can not agree with the defendant. We think that a careful reading of the testimony of the eye-witness to the killing shows that the jury could have legitimately reached the conclusion that he suddenly looked up and saw practically nothing of the transaction except the knocking of a dog off the track. In view of the fact that neither the engineer nor the fireman saw, or was conscious of the occurrence at the time, and that their material testimony was largely hypothetical and opinionative, we can not say that the jury were bound to conclude that the employees of the railroad company used ordinary and reasonable care and diligence to discover the dog upon the track and to avoid injuring it. See *Ga. So. & Fla. Ry. Co.* v. *Converse,* 29 *Ga. App.* 411 (116 S. E. 20) ; *Seaboard Air-Line Ry. Co.* v. *McDonald,* 19 *Ga. App.* 627 (2) (91 S. E. 1053).

*Judgment affirmed. Broyles, C. J., and Bloodworth, J., concur.*